IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

| | | |
|---|---|---|
| A.M., a Minor,<br>By LATASHA MILLS<br>Her Parent and Next Friend<br>12877 Cara Dr.<br>Woodbridge, Virginia | )<br>)<br>)<br>) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. _____ |
| THE UNITED STATES OF AMERICA | ) | |
| SERVE:<br>G. Zachary Terwilliger, Esquire<br>United States Attorney for the Eastern<br>District of Virginia<br>2100 Jamieson Avenue<br>Alexandria, VA 22314 | )<br>)<br>)<br>) | |
| And | ) | |
| William P. Barr, Esquire<br>Attorney General of the United States<br>United States Department of Justice<br>950 Pennsylvania Ave., N.W.<br>Washington, DC 20530 | )<br>)<br>) | |
| Defendant. | ) | |

**COMPLAINT**
**(FTCA: Negligence/Medical Malpractice)**

COMES NOW, A.M., a minor, by Latasha Mills, her Parent and Next Friend. by and through her attorney, hereby files this Complaint against the Defendant, |The United States of America ("USA") pursuant to the Federal Torts Claims Act for damages sustained by A.M. during the deliver of healthcare at a Army Hospital. Plaintiff alleges as follows:

1. Plaintiff A.M., a minor by Latasha Mills, her parent and next friend, are both residents of the Commonwealth of Virginia.

2. The Defendant The United States of America, at all times relevant to the claims set forth herein, including December 12, 2015, controlled and operated Fort Belvoir Community Hospital and employed the health care providers who provided care to A.M., including Joan Hammond, N.P., Ryan Macasio, M.D. and Nathaniel Gordon, M.D.

3. Jurisdiction is proper under 28 U.S.C. § 1346(b) as Plaintiff asserts claims for damages for personal injury and related damages sustained by A.M., a dependent minor whose parent, Latasha Mills, is and was an active member of the military against the United States for the negligent acts of its employees acting in scope of their employment.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1346(b) and 1391 because the claims asserted for money damages against the USA occurred within this Court's district, and because the minor Plaintiff and her parent/next friend reside in the Commonwealth of Virginia.

5. Plaintiff timely filed her administrative claim (using Form SF-95) as required by 28 USC §2401 on May 13, 2016. (Exhibit 1.)

6. The USA acknowledged receipt of the Plaintiff's Form 95 by letter dated May 17, 2016. (Exhibit 2.)

7. This Complaint is filed following the agency's failure to make final disposition within 6 months of her filing her administrative claim, which is deemed a final denial by the agency according to 28 USC §2675(a).

8. To date, the USA has neither denied or taken any final agency action on Plaintiff's claim.

9. Defendant operates Fort Belvoir Community Hospital in Virginia and employs the health care providers who care for patients there, including those who provided care to A.M. in December, 2015. At all times mentioned herein, the medical care provided to A.M. was provided by the employees and officers of Defendant United States, all acting within the scope of their employment.

10. Nathaniel Gordon, M.D., Joan Hammond, N.P., and Ryan Macasio, M.D. were health-care providers, licensed in the Commonwealth of Virginia, who provided care and treatment to A.M. in Virginia and as such, owed to the minor newborn infant a duty to conform their conduct to prevailing standards of care. A patient-health care provider relationship existed between each of the providers and A.M., and between the providers and Latasha Mills.

11. On or about December 11, 2015, Active Service Member Latasha Mills was approximately 40 weeks, 5 days pregnant when she presented to Fort Belvoir Community Hospital, a military hospital in the Commonwealth of Virginia.

12. On or about December 12, 2015, Latasha Mills delivered A.M. at Fort Belvoir Community Hospital, by its employee health care providers.

13. Defendant, by and through its employee health care providers provided pediatric care to newborn baby, A.M. beginning immediately after her birth on December 12, 2015 at Fort Belvoir Hospital.

14. On December 12, 2015, the Defendant's NRP Team was present at delivery to care for A.M. upon delivery, according to a note by Nathaniel Gordon, M.D.

15. A.M. cried loudly at birth and was found to have Apgars of 8 and 9 at 1 and 5 minutes of life. She was bulb suctioned, then deep suctioned in the mouth and nares at 3 minutes

of life, then taken from labor and delivery to be cared for in Fort Belvoir Community Hospital's special care nursery by employees of Fort Belvoir, a military hospital.

16. A.M.'s initial physical exam was documented by Nurse Joan Hammond, at 1900 on December 12, 2015. Nurse Hammond documented a plan that included administration of antibiotics to A.M. via IV for 48 hours, due to maternal infection.

17. Nurse Hammond's next note in the medical record was at 2100.

18. In the two-hour interim, Nurse Hammond, in conjunction with Defendant employee health care providers whose identities are unknown to Plaintiff, made attempts to place an IV in A.M.'s right hand.

19. While attempting to locate a vein in which to place the IV, Nurse Hammond, individually, or in conjunction with other employed health care providers of this Defendant, improperly and negligently utilized a flashlight or other unauthorized light and heat source not approved for this medical use on a neonate, particularly when placed against the fragile skin of a newborn, and in conjunction with topical antiseptic and/or other substances.

20. The use this improper light and heat source, and the use particularly in the setting and manner it was used by Nurse Hammond, placed A.M. at immediate and predictable risk of severe skin burn, injury to vital tissue, nerve, and vascular structures.

21. The Defendant's employee health care providers, including but not limited to Nurse Hammond, ignored the risks their conduct posed to A.M.'s hand and health and well-being, and with informed consent and contrary to reasonable care, applied the improper light and heat source directly to A.M.'s skin after the application of the antiseptic or other materials.

22. In her note at 2100, Nurse Hammond documented a new and alarming finding: a 1 cm x1.5cm blister on the palm of A.M.'s right hand, and a second 1 mm blister between her first two fingers of the same hand. The hand is noted to be red and swollen, extending to the right wrist side of the hand.

23. The only wound care provided to A.M. was application of petroleum jelly and gauze. The blistering burn expanded dramatically as a result of the application of petroleum jelly. No burn specialist evaluated A.M. at the time of the injury, despite the risk of permanent injury to the hand, about which Defendant's employee health care providers knew or should have known.

24. When Latasha Mills first saw her daughter and noted the blistering burns, she asked Defendant's employee health care providers for answers. At no time prior to this had Latasha Mills been informed of the Defendant's employees plan to use this unsafe device on her newborn daughter's hand/wrist and at no point prior to the harm was Ms. Mills given any information about options in terms of use of this device given the application of the solution and other safe methods to insert the IV.

25. Two doctors, including pediatrician Dr. Ryan Macasio, spoke with Latasha Mills during her hospitalization and admitted that the combination of the applied solution and the heat from the light source used may have caused the blistering burns to A.M.'s hand. Prior to discharge, Latasha Mills was told again by the doctor that A.M. had experienced a reaction to the solution and a "lamp" used to locate A.M.'s vein. The discharge summary by pediatrician Tiffany Stratton, M.D. vaguely states that A.M.'s hand was burned during a lab draw.

26.     During A.M.'s first pediatric appointment at Fort Belvoir on or about December 16, 2015, Defendant's employee health care provider told Latasha Mills that Defendant's employee health care provider burned A.M.'s hand as a result of the heat from the flashlight held against the skin of her palm during insertion of an IV.

27.     The only guidance provided at discharge and the early pediatric appointments to Latasha Mills about A.M.'s burn was that she should not pop the blistering caused by the burn.

28.     The acute healing process was painful and protracted, but even after the acute blistering and burn healed, A.M. has suffered scarring and dysfunction to the tissues, nerves and structures of the hand that continue today.

29.     A.M. has suffered, and will continue to suffer in the future, physical pain and suffering, mental anguish, emotional distress, disfigurement, and other injuries and damages

30.     As A.M. has grown, the effects of the injury to her hand, caused by the negligence of Defendant's employee health care providers, have continued and have interfered with her use of her right hand and enjoyment of activities she would otherwise be able to participate in without limitation.

31.     A.M. permanently suffers from scarring, disfigurement and sensory and motor dysfunction to her hand as a proximate result of the burn.

32.     Throughout A.M.'s life, she has suffered and will continue to suffer from manual dysfunction, pain, limitations and disfigurement that will necessitate modifications to her environment to accommodate her disabilities.

33.     A.M. is not in need of assistance in all of her activities of daily living. A.M. did not suffer a "birth-related neurological injury" as that term is defined by Code of Virginia § 38.2-

5001, the Virginia Birth-Related Neurological Injury Compensation Act. As such, the Virginia Birth-Related Neurological Injury Compensation Act does not apply to this case.

## COUNT ONE
## NEGLIGENCE/MEDICAL MALPRACTICE
### (Federal Tort Claims Act)

34. Plaintiff incorporates all previous paragraphs.

35. The Defendant, individually and through its employees and/or officials, including but not limited to Nathaniel Gordon, M.D., Joan Hammond, N.P., and Ryan Macasio, M.D., and other health care providers whose names are not known to Plaintiff, provided medical care to A.M. and to Latasha Mills at Fort Belvoir Community Hospital on or about December 12, 2015 and continuing thereafter.

36. Defendant, by and through its employees and/or officials, presented themselves to Latasha Mills and to the patient community they serve as licensed providers who possessed the degree of knowledge, ability and skill possessed by reasonably competent medical practitioners, practicing under the same or similar circumstances as those involving A.M. and Latasha Mills. Fort Belvoir Hospital also held itself out as a licensed community hospital with safe equipment and employees who were trained and supervised to use proper equipment on neonates and all other patients at all times relevant to their inpatient care.

37. Defendant, including Fort Belvoir Hospital and its employees and/or agents owed to A.M. a duty to exercise that degree of skill, judgment, and care expected of reasonably competent medical practitioners and a duly licensed hospital practicing under the same or similar circumstances as those involving A.M. and Latasha Mills; which duty included taking appropriate precautions in the use of safe and approved medical devices for the placement of an

IV in an infant or for a blood draw on a newborn infant; performing appropriate evaluations to assist in location of a vessel in which to place an IV or perform a blood draw; using appropriate topical substances with approved medical devices, and equipment in the placement of an IV or performing a blood draw; using only appropriate specialized medical devices and equipment for use on a newborn infant; performing appropriate diagnostic and therapeutic care techniques and modalities; only allowing approved and appropriate medical devices in the hospital setting for use by its employees on neonates; and timely and safely placing an IV or performing a blood draw – all of which Defendant Hospital and its employees failed to do.

38. The Defendant was further negligent in that it, by and through its employees and officers:

    a. failed to properly monitor and assess A M.'s condition;

    b. failed to properly and safely carry out interventions for the medical care and treatment of A.M.;

    c. failed to properly and safely locate a vessel in which to place an IV or perform a blood draw for diagnostic and or therapeutic medical care;

    d. failed to take appropriate precautions to avoid causing burns and other injury to A.M. and the skin on her right hand and wrist;

    e. improperly used tools, devices, and equipment, including a flashlight or other unapproved device with the solution on the right hand and wrist, which was not intended for or safe to use in the course of medical care of an infant;

    f. failed to use an approved medical device or equipment in the course of medical care of an infant;

    g. improperly applying a heat source directly to A.M.'s skin during placement of an IV or when performing a blood draw;

    h. applying an improper and inappropriate heat source directly to A.M.'s skin during placement of an IV or when performing a blood draw;

    i.    failed to appreciate the unreasonable but foreseeable risk to A.M. and the likelihood that the light and heat source in combination with the materials used as antiseptic on the area would burn the skin on A.M.'s hand;

    j.    failed to locate and use an appropriate medical device to assist in the safe placement of an IV or performing a blood draw in A.M. artery;

    k.    failed to avoid injury to A.M.;

    l.    failed to avoid economic damages to Latasha Mills by causing injury to her newborn child;

    m.    failed to engage, arrange for, and consult appropriate medical care and specialties promptly following the injury, including a burn specialist or plastic and reconstructive surgeon; and

    n.    were otherwise negligent.

40. As a direct and proximate result of the Defendant's negligence, A.M. has suffered, and will continue to suffer economic damages in the form of past and future medical expenses, resulting from the negligent care and injuries caused to her hand.

41. As a direct and proximate result of the Defendant's negligence, A.M. has suffered severe and permanent injuries, and has and will continue to suffer non-economic damages, including a severe burn to her hand, scarring, contractures, disfigurement, nerve damage including loss of sensation and vascular damage, pain and suffering past and future, embarrassment, future lost earning capacity; and other lifelong physical and mental damages.

WHEREFORE, Latasha Mills, as mother and Next Friend of A.M., requests judgment against the Defendant in the amount of ten million dollars ($10,000,000.00), and for pre-judgment and post-judgment interest, and all other relief the Court deems appropriate.

## COUNT TWO
## FAILURE TO PROVIDE INFORMED CONSENT
(Federal Tort Claims Act)

42. Plaintiff also asserts a claim for damages caused by the Defendant's failure to obtain informed consent and incorporates by reference the allegations contained in paragraphs 1-41 as if fully set forth herein.

46. Plaintiff's mother Latasha Mills, was not informed of the material risks and complications of the use of the heat source on A.M.'s wrist and hand. She was not informed that an unapproved device with substantial heat was going to be used on her daughter's wrist and hand. She was not given an opportunity to decline that option and to ask for another safe and recognized method to be used for the IV and/or blood draw.

47. If Latasha Mills, or any reasonable person in Plaintiff's position, had been fully informed of the plan and other safe alternatives, or any reasonable person in Plaintiff's position, would not have consented to the procedure and would have asked for another device to be used or for another experienced practitioner to insert the IV and/or perform the blood draw in a safe manner.

48. Defendant's failure to provide informed consent was a proximate cause of all of the injuries and damages sustained by Plaintiff A.M.

49. As a result of Defendant's failure to provide Plaintiff with informed consent, Defendant is liable for all the damages and injuries that resulted.

WHEREFORE, Latasha Mills, as mother and Next Friend of A.M., requests judgment against the Defendant in the amount of ten million dollars ($10,000,000.00), and for pre-

10

judgment and post-judgment interest, and all other relief the Court deems appropriate.

                        Respectfully submitted,

                        /S/ Allyson Kitchel (#70161)
                        Allyson Kitchel
                        600 Pennsylvania Ave SE #15035
                        Washington, DC 20003
                        202-734-5330
                        allyson@kitchellaw.com

                        *Counsel for Plaintiff*

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Defense Health Agency, Fort Belvoir Community Hospital<br>Office of the Command Judge Advocate<br>9300 Dewitt Loop, Sunrise Pavilion<br>Fort Belvoir, VA 22060 | Latasha Mills, parent and next friend to A____ M____<br>12877 Carra Dr<br>Woodbridge, VA 22192 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH<br>12/12/15 | 5. MARITAL STATUS<br>N/A | 6. DATE AND DAY OF ACCIDENT<br>12/12/15 Saturday | 7. TIME (A.M. or P.M.)<br>Unknown |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

See Attached Exhibit 1 and 2

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

See Attached Exhibit 1 and 2

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Latasha Mills, parent and next friend to A____ M____ | Bertram & Amell<br>1100 Vermont Ave.<br>Suite 500<br>Washington, DC 20001 |

12. (See instructions on reverse) **AMOUNT OF CLAIM (In dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| | 10,000,000.00 | | 10,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| See Attached Exhibit 2  /s/ Laura A. Amell | 202-803-5800 | 5/11/2016 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

Received MAY 2016

95-109
Previous editions not usable.   NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) (EG)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

Claim# 16-330-T [handwritten]



**DEFENSE HEALTH AGENCY**
FORT BELVOIR COMMUNITY HOSPITAL
OFFICE OF THE COMMAND JUDGE ADVOCATE
9300 DEWITT LOOP, SUNRISE PAVILION
FORT BELVOIR, VIRGINIA 22060

May 17, 2016

Laurie A. Amell
Bertram & Amell, PLLC
1100 Vermont Ave, NW Suite 500
Washington DC, 2005-6342

Re: FTCA Claim of A    M          Minor, by her Parent and Next Friend, Latasha Mills, Claim Number: 16-330-T006

Dear Ms. Amell:

This office is in receipt of the above subject claim filed against the United States Government on behalf of A    M       in the amount of $10,000,000.00 (Ten Million Dollars). This is the proper office to process your claim, which was received by this office on May 13, 2016. A copy of the Standard Form 95 (SF95) with the date stamp reflecting the date of receipt is enclosed for your records.

This office will process the claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680. The filing of an administrative claim tolls the statute of limitations indefinitely, or until the appropriate Government agency takes final administrative action in writing on the claim. Final administrative action consists of a denial or final settlement offer. While the FTCA permits filing suit six months after the claim has been properly filed with the appropriate Government agency, filing suit at six months is not mandatory (28 U.S.C. § 2675(a)). If you should decide to file suit, a Federal judge will decide the case without a jury.

You are required to submit evidence to support this claim (28 C.F.R. § 14.4). As a result, I request you provide this office with the following to substantiate the claim:

    a) all documents associated with the claim, including medical records; and,

    b) a list of all health care providers and facilities that have provided medical care to your client, to include all civilian providers and facilities. Please also include contact information for each of the civilian health care provider(s) and facility(s) identified.

Please have your client sign and return the enclosed Health Insurance Portability and Accountability Act (HIPAA) information disclosure form return it to my attention at the address listed on this letterhead. Also enclosed is an explanation of your rights under HIPAA.

A claim must be filed no later than two years from the date of incident. The statute of limitations begins on the day of the incident and is tolled upon receipt of the claim form by the United States. The claim must be in the physical possession of the Federal Agency to toll the statute.

If the Government pays the claim, the FTCA limits attorney fees to 20 percent of any administrative settlement and 25 percent of any recovery as a result of suit (28, U.S.C. § 2678). The claimant pays attorney fees out of the claim settlement.

Further, please be advised if any involved healthcare provider(s) who rendered care to you relative to the claim were not government employees, the FTCA does not impose a duty on the United States to determine the status of health care providers for you. The determination of whether an individual health care provider is an independent contractor or employee of the United States requires an application of current law to the individual facts of this claim. We will attempt, however, to identify and notify you of any independent contractor involved with this claim if this information becomes available in the course of our investigation. If the applicable statute of limitation is approaching, you should make every effort to identify non-government employees and their employers to protect your interests because our investigation may not determine the status of the health care providers involved with this claim for some period of time. If you have any questions pertaining to any specific provider, please notify me.

Should you have questions regarding the claims investigation, you may contact Ms. Jeri Cobb, Tort Claims Paralegal, at (571) 231-2870, or me, at (571) 231-2877.

Thank you,

Debbie Davis
Attorney Advisor

Enclosures:

1. Copy date-stamped SF 95
2. Authorization for Release of Medical Records and Rights under HIPAA